276 So.2d 589

John D. **COLEMAN**

v.

**The STATE of Alabama.**

**SC 271.**

Supreme Court of Alabama.

April 19, 1973.

Edward F. Morgan, Tuscaloosa, for appellant.

347

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

1. Title 14, § 200. Forgery in second degree, of will, deed, note, bond, bill, order, etc.—Any person who, with intent to injure or defraud, falsely makes, alters, forges, counterfeits, or totally obliterates any will of real or personal property, or any deed, conveyance, or other instrument, being or purporting to be the act of another, by which any right or interest in property is, or purports to be transferred, conveyed, or in any way changed or affected; or any bond, bill-single, bill of exchange, promissory note, or any indorsement thereof, the forgery of which does not constitute forgery in the first degree; or any warehouse receipt, or receipt for the payment of money, or any instrument or writing, being or purporting to be the act of another; or any entry in any book account, by which any pecuniary demand or obligation is or purports to be created, increased, discharged, or diminished; or who, with such intent, utters and publishes as true any falsely made, altered, forged, or counterfeited instrument, writing, indorsement, or entry, specified or included in this section, is guilty of forgery in the second degree.

FAULKNER, Justice.

Appellant, John D. Coleman, was indicted by the Grand Jury of Tuscaloosa County for the offense of forgery in the second degree in violation of Title 14, § 200, Code of Alabama 1940, Recompiled 1958.[1] Coleman, together with his attorney of record, waived his right to a jury trial. The case was tried by the circuit judge on a plea of not guilty. Coleman was found guilty as charged and sentenced to a year and a day in the State penitentiary of Alabama. He appealed from such conviction to the Alabama Court of Criminal Appeals and assigned two errors. First, he challenged the order of the trial judge overruling the demurrer to the indictment. The thrust of the demurrer was that the indictment showed on its face that the offense sought to be charged was that of violation of the Credit Card Act, Title 14, § 105(4)(i)(ii).[2]

2. Title 14, § 105(4). Fraudulent use of or representation of authority to use illegally obtained or illegally possessed credit card, forged credit card or revoked, expired or fictitious credit card.—A person, who, with intent to defraud the issuer, a person or organization providing money, goods, services or anything of value, or any other person, (i) uses for the purpose of obtaining money, goods, services or anything else of value a credit card, or the information therefrom, obtained or retained in violation of section 105(3) of this title or a credit card which he knows is forged, expired or revoked, or (ii) obtains money, goods, services or anything else of value by representing without the consent of the cardholder that he is the holder of a specified card or by representing that he is the holder of a card and such card has not in fact been issued, violates this subsection and is subject to the penalties set forth in subsection (a) of section 105(10) of this title, if the value of all money, goods, services and other things of value obtained in violation of this subsection does not exceed $500 in any six-month period.

The second error assigned is that the State's evidence revealed that Coleman violated the Credit Card Act and that such evidence was insufficient to prove forgery in the second degree. On February 21, 1973, the cause was transferred to this court from the Court of Criminal Appeals.

The indictment reads as follows:

"The Grand Jury of said County charge that before the finding of this indictment JOHN DOUGLAS COLEMAN whose name is otherwise unknown to the Grand Jury with intent to injure or defraud, did falsely make, alter, forge, or counterfeit a certain credit card invoice * * * or with intent to injure or defraud, did utter and publish as true the said falsely made altered, forged, or counterfeited credit card invoice knowing the same to be so altered, forged, or counterfeited, against the peace and dignity of the State of Alabama."

The evidence is summarized in a stipulation announced in open court by Coleman's attorney, Edward F. Morgan:

"MR. MORGAN: Your Honor, as counsel for the Defendant, the Defendant agrees to stipulate for the purposes of this trial that he was advised of his constitutional rights by Detective Ingram and that he voluntarily, without hope of reward or without any threats, told Detective Ingram that he used the credit card with the name of J. A. Walker on it without any authority from J. A. Walker to do so and that he signed the credit card invoice with the name of J. A. Walker, which is State's Exhibit Number 1."

The Credit Card Act was passed by the Legislature of Alabama in 1969. See 1969 Acts of Alabama, No. 1116, Vol. III, p. 2059. Section II of this Act, which is codified as Title 14, § 105(11), Code of Alabama 1940, Recompiled 1958, provides that:

"This chapter shall not be construed to preclude the applicability of any other provision of the criminal law of this state which presently applies or may in the future apply to any transaction which violates this chapter, unless such provision is inconsistent with the terms of this chapter."

■ Forgery in the second degree pertains to the altering, forging, counterfeiting, with intent to injure or defraud of numerous instruments listed in Title 14, § 200, Code of Alabama 1940, Recompiled 1958. Among those listed instruments are "any instrument or writing, being or purporting to be the act of another." The credit card invoice to which Coleman affixed the forged signature is such an instrument.

■ We do not consider forgery in the second degree inconsistent with violation of the credit card chapter. Each offense is cumulative of the other. Both offenses belong to the same general family of crimes, i. e., obtaining property by false and fraudulent means. In such situation different felonies may be joined in one count in the alternative if the punishment is the same. They may be joined in *separate* counts of the same indictment even though punishable by different degrees of severity. Flournoy v. State, 34 Ala.App. 23, 37 So.2d 218 (1948), and cases cited therein.

But we are not here concerned with alternative charges growing out of one offense. The indictment charges only one offense, i. e., forgery of the described credit card invoice.

■ There can be no doubt that it is within the competency of the legislature to create two or more criminal offenses which may be committed by a single act. Gunter v. State, 111 Ala. 23, 20 So. 632 (1895); Smithson v. State, 34 Ala.App. 343, 39 So.2d 678 (1949).

 

In such event, the state may elect to prosecute for either offense, or under either statute. See 22 C.J.S. Criminal Law § 9(1), and particularly footnote 41, where numerous cases from some fifteen states and several federal cases are cited.

In Clonts v. State, 42 Ala.App. 287, 161 So.2d 155 (1964), the appellant had been convicted of obtaining five automobile tires by false pretense. He was sentenced to imprisonment in the penitentiary for five years. The evidence showed that the tires were obtained by the appellant by using a credit card and driver's license belonging to Dr. Carney who had lost his wallet prior to the appellant's obtaining the tires.

This cause was reversed on other grounds. However, one of the points argued for reversal was that the offense charged was a misdemeanor growing out of the unauthorized use of a credit card and the appellant therefore could not be charged with obtaining goods by false pretense.

In disposing of this point, the then Court of Appeals stated:

"The fact that our statutes make the unauthorized use of a credit card a misdemeanor, does not prevent the charge of obtaining property by false pretense where, as here, the facts arising out of the use of a credit card embrace all of the elements of such crime. The indictment follows the Code form for indictments charging the obtaining of property by false pretense."

We can see no difference in principle between *Clonts,* supra, a conviction for false pretense, and the present case, a conviction for forgery in the second degree, and *Clonts* is controlling on the point in question.

Appellant asserts in his brief that it appears that the legislature was addressing itself specifically towards cases like Clonts v. State when it drafted Title 14, § 105(11). We do not agree for the reasons stated above.

We have reviewed the entire record and find no error.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.