318 So.2d 348

Arthur James JONES

v.

STATE.

I Div. 552.

Court of Criminal Appeals of Alabama.

July 29, 1975.

Ian F. Gaston, Mobile, for appellant.

William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of the crime of false pretense and sentenced to ten years in the penitentiary. He was represented by court appointed counsel at arraignment and throughout the trial. After conviction he gave notice of appeal and a free transcript was furnished him. New counsel was appointed to represent him on a motion for a new trial and on appeal.

Omitting the formal parts the indictment reads as follows:

"The GRAND JURY of said County charge, that, before the finding of this indictment ARTHUR JAMES JONES, ALIAS FOY E. COCHRAN, whose name is to the Grand Jury otherwise unknown than as stated, did falsely pretend to Leon Franklin Brady, with intent to defraud, that he was Foy E. Cochran and that he had a checking account in The First National Bank of Mobile with sufficient funds to cover the one hundred four dollar and eighty-nine cent check that he gave to the said Leon Franklin Brady, and by means of such false pretense did obtain one Sears three-way tape recorder of the value of one hundred four dollars and eighty-nine cents, the property of Sears, Roebuck & Co., against the peace and dignity of the State of Alabama."

According to the tendencies of the state's evidence appellant, using his alias, Foy E. Cochran, went to Mobile, Alabama, in May of 1974, to engage in a "check kiting" scheme to defraud people out of their money or property.

He went to The First National Bank of Mobile and opened a new account in the name of Foy E. Cochran in which he deposited fifty dollars in cash. He gave a fictitious Social Security number and a fictitious address. The bank issued him several "starter checks." It seems to be a common practice in the banking industry that when a new account is opened, the bank issues to the new customer a few checks to draw on the account until new checks can be printed carrying the name of the new customer and his account number.

After leaving the First National Bank, he went to the American National Bank of Mobile and opened an account, and the same identical procedure was followed.

On the same date, May 31, 1974, appellant returned to the First National Bank and went to a teller window and deposited a check, payable to him, and drawn on the Carver State Bank of Savannah, Georgia, in the amount of $350.00. This was a personal check allegedly signed by one Cecil Fisher. This check was a forgery.

He then returned to the American National Bank and remained in the automobile of his companion, Larry Howard, while Howard went in the bank and deposited another check allegedly signed by Cecil Fisher to the account of Foy E. Cochran.

Appellant was now ready to embark upon his fraudulent scheme that brought him to Mobile.

Mr. Leon Franklin Brady, Jr., testified that he was employed at Sears, Roebuck and Company located in the Bel Air Mall in Mobile and had been so employed for fifteen years. He was a salesman in the T.V. and Home Entertainment Department where stereos, tape players, radios, etc. were for sale. He stated that on June 1, 1974, a man representing himself to be Foy E. Cochran came to the counter in his department and was looking at a tape player and expressed a desire to purchase it. Mr. Brady told him the tape player was on sale for $99.00 plus tax. Cochran made out a check for $104.89 which was the purchase price of the tape player including the tax. Mr. Brady told Cochran that he did not have authority to accept a check in that amount and sent him to the cashier's department to get the check approved. The check was approved and retained in the cashier's department and a cash sales ticket was given to Cochran to pick up the tape player. He presented this ticket to the salesman and picked up the merchandise. Mr. Brady pointed to Cochran in the court room and identified him as the man who presented him the check and as the man who picked up the tape player.

The check was presented to the First National Bank of Mobile for payment and was subsequently returned to Sears-Roebuck with a notation on the back of the check stating "uncollected funds."

Mr. James A. Monroe, the security manager of Sears-Roebuck, was the man who approved Cochran's check. Mr. Monroe pointed to Cochran at trial and identified him as the man who presented the check to him for approval.

Mr. Frederick Joseph Straub who was assistant manager of the customer accounting department of the First National Bank testified that he was familiar with the account in the name of Foy E. Cochran. That this was a new account and was opened on May 31, 1974, with a cash deposit of $50.00. He further testified that some time on the same day Cochran deposited a check in the amount of $350.00 drawn on the Carver State Bank in Savannah, Georgia, and signed by one Cecil Fisher. This check was returned unpaid with the following notations on the face of the check: "Do not redeposit," "Insufficient funds," and "account closed."

Appellant and Larry Howard drove to a window of a branch bank of American National Bank to inquire as to the balance in his account. The teller told him to come inside and discuss the matter with one of the bank's officers. He went inside and the officer got him to surrender the "starter checks" the bank issued him when he made a cash deposit of $50.00. The bank refunded him the $50.00 and closed the account.

When the $104.89 check was returned to Sears-Roebuck, Mr. Monroe contacted the Mobile Police Department and Police Sergeant John W. Phillips, Jr., of the criminal investigation division was assigned to the case. Sergeant Phillips was contacted by Mr. Bryan Sheehy, Vice President of the American National Bank and Special Agent Frank Gilman of the Federal Bureau of Investigation. As a result of information he received from these two men, he went to the Toulminville Branch of the First National Bank. He received information at this branch that led to the arrest of appellant. He was carried to the office of Sergeant Phillips in the criminal investigation division of the Mobile Police De-

partment. Phillips gave appellant the *Miranda* rights and warnings and he signed a waiver of rights and counsel. This waiver is as follows:

## "STATE'S EXHIBIT NUMBER 4

### WAIVER OF RIGHTS AND COUNSEL BY DEFENDANT IN CUSTODY

I, Foy Ed Cochran, have been informed by the undersigned law enforcement officers, prior to being questioned by them, that I am suspected of the offense of Forgery/Obtaining Merchandise by False Pretense in Mobile County, Alabama, on the 5th day of June, 1974, and have been informed by them of my rights as follows:

1. That I may remain silent and do not have to make any statement at all.

2. That any statement which I might make may and will be used against me in Court.

3. That I have a right to consult with an Attorney before making any statement and to have such Attorney present with me while I am making a statement.

4. That if I do not have enough money to employ an Attorney, I have the right to have one appointed by the Court to represent me, to consult with him before making any statement, and to have him present with me while I am making a statement.

5. That if I request an Attorney, no questions will be asked me until an Attorney is present to represent me.

6. That at any time during the questioning I may request that the questioning be stopped, and it shall be stopped.

After having my rights explained to me, I freely and voluntarily waive my right to an Attorney. I am willing to make a statement to the Officers. I can read and write the English language and fully understand my right to an Attorney. I have read this waiver of counsel and fully understand it.

No threats or promises have been made to me to induce me to sign this Waiver of Rights and Counsel, and to make a statement to the Officers on this 5th day of June, 1974.

SIGNED: /s/ Foy E. Cochran

DATE: 6–5–74

DAY: Wednesday

TIME: 4:45 PM

WITNESSES:

/s/ Sgt. J. W. Phillips
_____"

———◆———

After the execution of the above-quoted exhibit, appellant gave Phillips an oral statement.

Sergeant Phillips began to question him about his activities in Mobile. In the beginning appellant told Phillips that his name was Foy E. Cochran. During the interrogation appellant said, "Officer, I have been misleading you. My true name is Arthur James Jones." He then went on to recount his activities in opening bank ac-

counts in the American National Bank and the First National Bank by making a cash deposit in each bank. That he followed this by depositing in each bank checks in the amounts of $350.00 drawn on the Carver State Bank of Savannah, Georgia, and that these checks were allegedly signed by one Cecil Fisher. He told Sergeant Phillips that he had purchased these checks from an unknown black female on the streets of Savannah, Georgia.

From the record:

"A   I asked him did he know who Cecil Fisher was, and he stated that he did not. I inquired of him as to the checks that he deposited into both banks, the First National and the American, which were made payable to Foy E. Cochran, and they were signed Cecil Fisher, and he stated that they were forgeries; they had not been given to him by Cecil Fisher, that an associate of his had made the checks out, and that he had deposited them into the bank.

Q   He admitted to you that the three hundred and fifty dollar check that he deposited in the First National Bank was a forgery?

A   Yes, sir."

*     *     *     *     *     *

"A   The next day, which would have been June the 1st, he stated that he went to the shopping center, which would be the Bel Air Mall, and in my conversation with him, of course, he was offering me with the correct names of the different shopping centers, and we more or less pinpointed it down by describing it as the shopping center which was the closest.

Q   All right.

A   He stated that he had gone to the department stores of Holmes and Sears, which we described as being the two big department stores at each end of the Mall.

Q   All right.

A   He stated that he went to both of these stores and made purchases with the checks that had been given him by the First National Bank on this new account in the name of Foy E. Cochran.

He was able to describe the merchandise which he had obtained at both places, and, of course, he described this tape recorder.

Q   This here State Exhibit Number 1?

A   Yes, sir.

Q   All right.

A   (Continuing)   As the merchandise that he had purchased from the Sears department store."

*     *     *     *     *     *

"A   He stated, further, that after receiving the merchandise, he then took this merchandise, of course, along with others that he had purchased, to various pawn shops in downtown Mobile and pawned them, and thus converting it into cash and receiving cash money for the merchandise."

*     *     *     *     *     *

"A   On this particular day, June 5th, he stated that he had just arrived back in Mobile prior to his arrest from New Orleans, Louisiana. That he had gone over to New Orleans, Louisiana, for the purpose of checking out the banks in that city to initiate a check kiting scheme such as he had started here in Mobile. He stated that, however, he did not get to complete his mission because he went to the race track and lost what money he had at the race track.

In discussing other cities, he did state that he had been through other towns throughout Alabama perpetrating this same type check kiting scheme.

Q   What do you mean by 'kiting', when you say that, please?

A  I mean that when—Such as you have described here on the blackboard, where you go into a bank and you open an account, and then you use a check on another bank for a deposit to show that you have a balance in the new account that you have opened. This, of course, gives the immediate impression, you know, that you have sufficient funds.

Q  I see.

A  This type of operation is just like this. They would go around to various merchants and make purchases on checks that, of course, had no value.

Q  All right, sir. I see.

And you say you subsequently checked out this information that he had given you on his background, and that he was, in fact, Arthur James Jones?

A  Yes, sir. In the course of being processed in the City Jail and fingerprinted, these were sent off to Washington, and we, of course, get a return on any prior history of an individual."

The tape recorder was pawned to the Star Loan and Gun Shop, 50 South Royal Street in Mobile, in the name of Foy E. Cochran, and this transaction was reported to the Police Department. The pawn shop ticket was introduced in evidence without objection as state's Exhibit No. 5, and the amount advanced was shown to be $25.00. Another police officer picked up the tape recorder from the pawn shop and introduced it in evidence as state's Exhibit No. 1 without objection.

Appellant testified in his behalf. His testimony covers some forty-eight pages of the record. It would serve no useful purpose to set out in detail his testimony. In short, he admitted coming to Mobile on May 31, 1974, and testified as to the banking transaction with the American National and First National Bank of Mobile. He admitted the purchase of the tape recorder from Sears and that he subsequently

pawned it and other items purchased at big department stores.

He admitted the various crimes for which he had been convicted. He denied telling Sergeant Phillips that he knew the Carver State Bank checks were forgeries and that he was engaged in any check kiting scheme.

In rebuttal the state called Mr. Frank A. Gilman, Special Agent for the Federal Bureau of Investigation. He interviewed appellant after first reading him the *Miranda* rights from a card and asked him if he understood his rights and he replied, "that he had been advised of his rights many times, that he fully understood his, and that he would freely and voluntarily answer all questions asked of him."

On the whole this witness' testimony corroborated Sergeant Phillips as to the admissions made by appellant even as to the fictitious Social Security number that appellant stated he made up at the moment he gave Mrs. Kelley when he opened the account in the First National Bank.

There was no motion to exclude the state's evidence; there was no request for the affirmative charge; no exceptions were reserved to the oral charge of the court to the jury, however there was a pro se motion for a new trial filed and counsel was permitted to orally supplement additional grounds at the hearing on the motion, his main contention being that the state failed to prove a prima facie case against appellant unaided by his oral confession.

In *Holloway v. State*, 37 Ala.App. 96, 64 So.2d 115, the court held:

"Generally speaking, the crime includes a false representation of an existing or past fact which deceives and which induces the person to whom the deception is made to part with something of value. The falsity of the representation must be known to the accused and it must have been made with intent to defraud.

In other words, the offense consists of: (1) The pretense. (2) Its falsity. (3) Obtaining property by reason of the pretense. (4) Knowledge on the part of the accused of the falsity of the pretense. (5) Intent to defraud.

In the case of *Young v. State,* 155 Ala. 145, 46 So. 580, 581, the Supreme Court made this observation:

'And if a person should fraudulently represent a fact to be true, knowing at the time that it is not true, and resorts to the fraudulent representation to obtain money from another, and does so obtain it, he would be guilty of "defrauding" another by "deceitful means," and we do not doubt he would be guilty of obtaining the money under false pretenses.'

The case of *Eaton v. State,* 16 Ala.App. 405, 78 So. 321, 322, presents circumstances somewhat similar to those in the case at bar. In response to the review on appeal we held:

'The giving of the check, if given without an explanation to the contrary, was in and of itself a representation, symbol, or token that the defendant had money on deposit in the bank on which the check was drawn, and if this check was given with the intent to deceive the seller of the goods in this case, and he was thereby induced to part with the title to his property, and the symbol or token was false, and the seller was thereby deceived, the defendant was guilty. The jury by its verdict so determined, as it had the right to do, and we find no reason in the record for disturbing the judgment of conviction.' "

In *Gaddis v. State,* 39 Ala.App. 630, 106 So.2d 268, the court said:

"Circumstances tending prima facie to establish the corpus delicti may be aided by admissions or confessions of an accused, duly admitted, so as to satisfy a jury beyond a reasonable doubt of ac-

cused's guilt. *Bryant v. State,* 33 Ala. App. 346, 33 So.2d 402; *Singleton v. State,* 33 Ala.App. 536, 35 So.2d 375."

To the same effect is the holding of the Supreme Court in the case of *Bridges v. State,* 284 Ala. 412, 225 So.2d 821, wherein the court said:

"The oral confession of the defendant was found to have been voluntarily given. It is inadmissible for the purpose of prima facie proof of the corpus delicti. *Shelton v. State,* 217 Ala. 465, 117 So. 8. But, 'inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti. *Matthews v. State,* 55 Ala. 187, 195; *Ryan v. State,* 100 Ala. 94, 95, 14 So. 868.' *Hill v. State,* 207 Ala. 444, 446, 93 So. 460, 462. The facts of this case bring it squarely within this rule."

In *Bridges v. State,* supra, the court further held:

"The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust. *Cobb v. Malone,* 92 Ala. 630, 9 So. 738; *Stewart v. State,* 38 Ala.App. 365, 84 So.2d 658; *Evans v. State,* 39 Ala.App. 404, 103 So.2d 40, cert. denied 267 Ala. 695, 103 So.2d 44; *Jones v. State,* 40 Ala.App. 419, 114 So.2d 575."

We cannot say that the verdict in this case is so patently against the weight of the evidence as to convince us that it was wrong and unjust.

We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of the trial court should be, and is, affirmed.

Affirmed.

All the Judges concur.