326 So.2d 140

**Edward COLEMAN, alias**

v.

**STATE.**

**3 Div. 382.**

Court of Criminal Appeals of Alabama.

Jan. 20, 1976.

L. H. Walden, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston III, Asst. Atty. Gen., for the State.

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

The jury convicted this indigent appellant of assault with intent to murder. The trial judge imposed the maximum punishment of twenty years.

The victim of the alleged assault was William Carden. The indictment charges that Butch Coleman, alias Edward Coleman, assaulted the victim with intent to murder him by kicking and beating him. This appeal is captioned in the name of Edward Coleman, alias Butch Coleman. The certificate of the circuit clerk refers to appellant as Edward Coleman, alias Butch Coleman. However, it appears that Edward and Butch Coleman is one and the same person.

It appears from the evidence that on Saturday and Sunday, September 21 and 22, 1974, respectively, appellant-defendant, Butch Coleman, and the victim William Carden, were both prisoners in the County Jail of Montgomery County, along with other prisoners, when the alleged assaults occurred.

The evidence shows that a series of different assaults and physical abuses, hereafter stated more in detail, began about 1:00 p. m. on September 21, and lasted until about 9:00 p. m.

The record supports the contention of the State that appellant-defendant was the leader of these assaults; that he either committed the several assaults and physical abuses himself, or was an accomplice.

We are unable from the record to segregate these assaults and place them in an exact time or hour bracket, but it is sufficient to say that they occurred and were repeated at intervals. There was a continuous harassment between the hours of 1:00 p. m. and 9:00 p. m. on Saturday, September 21, 1974. The offenses adduced under the evidence were at intervals, but so interwoven and intervolved as to constitute the res gestae of the offense charged in the indictment.

The character of the several offenses committed by this appellant in person or by his leadership shed light on each other and reflect the cruel, vicious, savage, merciless, and inhuman conduct of this defendant during the hours aforementioned. Defendant did not take the stand, nor did he put upon any witnesses. The testimony of other prisoners as to this defendant's conduct on this occasion remained unchallenged.

The record shows that this defendant, either as an actual principal, or as an accomplice, committed assaults and physical abuses as follows:

Defendant accused one Cooter Brazzell of "snitching" to a preacher who had come to see him on a mercy mission. Defendant jumped on Brazzell, then he came in the dayroom and hit the victim Carden on the head and told him he wasn't going to "do nothing either."

It then appears defendant got a sharpened cup out of his cell, tried to give it to Carden, and told Carden to stab him (defendant) with it. Carden wouldn't do it. One Smoot, another prisoner, took the cup and put it under Carden's throat. Defendant then said, according to Carden, "Don't kill him, we'll kill him slow."

Then they, defendant and Smoot, ran Carden, who did not have on any clothes, around the table, sticking him with pins, and then kicked and stomped him. They then put him on a table and put a belt around his neck.

The victim said he got under a table, that defendant hit him two or three times with his fists, and that Larry McManus hit him with a Dingo boot and knocked him under the table.

While he was under the table, still undressed, Dutch and Roosevelt threw hot water on him, and then they took some paper and put it between Cooter Brazzell's

legs and lit it, and "he burnt me in the face . . . Cooter was on top of me."

The evidence further shows that Cooter "had his prick in my mouth and they stuck fire up in his hips." He testified that defendant and another prisoner made them get in that position. Defendant stuck some matches in "his tail," and then lit them; also stuck a domino "up in there."

They whipped Carden with his belt and then "hung me with it." "Butch did it, Charles Smoot helped him." Carden further testified that Smoot then tied the belt to the prison bars and pushed his (Carden's) feet off the table. The victim then passed out. It appears from the evidence of another prisoner, McCluskey, that he untied the belt and Carden then fell to the floor.

Carden further testified that before they had been running around the table, defendant and Roosevelt tied a string around his neck and put a slipknot tie in it. They then tied it to his testicles and penis, made him get down on the floor and walk around like a dog, and "drug him by the string." They then took "us" over to the shower and tied Carden to the bars; they then "throwed hot water on us," and made "us suck each other's penises."

Witnesses testified that "Dutch and Smoot" were the leaders of "all this."

It appears further that on Sunday or Monday morning, Sheriff Stevens took him to the hospital where he spent four days in intensive care.

The victim testified on cross that he beat and kicked him lots, all on this same day, Saturday, September 21, 1974.

On re-direct, the witness Carden testified:

"Q. Would you answer Mr. Walden's question? Did you think they were going to kill you?

"A. Yes, sir.

"Q. Did you get knocked out at all?

"A. Three times.

"Q. Did this man ever hit you and knock you out?

"A. He was hitting me. I can't say whether he knocked me out, but the Dingo boot knocked me down.

"Q. Did you end up in the hospital?

"A. Yes, sir.

"Q. How many days were you in intensive care?

"MR. WALDEN: Your Honor, we are going to object to whether there was any hospital.

"THE COURT: Overruled.

"MR. COLLIER: Unless it is tied—

"MR. THOMAS: How many days were you in intensive care?

"MR. COLLIER: If I could go further with Mr. Walden's objection, we would object unless the hospitalization can be shown to be a direct result of what he is charged with in this indictment.

"THE COURT: Overruled.

"Q. How many days were you in intensive care?

"A. Four days."

Suffice it to say, without further delineation, that Carden's testimony was supported by other witnesses.

■ Photographs of Carden, taken soon after the assault, were introduced in evidence. These pictures are not in the record, but the jury saw them and were informed thereby as to Carden's physical appearance from the alleged beatings. The pictures were admissible.

■ An intent to take life is an essential element of the offense of assault with intent to murder. *Bowen v. State,* 32 Ala. App. 357, 26 So.2d 205.

Such intent must be determined by the jury from facts proved so clearly as to leave no reasonable doubt of the intent of accused to commit murder.

 We think the evidence as to the beatings and the conduct of the defendant on the occasions presented a jury question as to the intent of this defendant. The trial court properly overruled the motions to exclude the evidence and for a new trial. So far as we are able to find in our review of the entire record, the court was free of prejudicial error in admitting evidence.

The whole of the testimony of the witnesses presented defendant as a depraved person, void of moral concepts, with a brutal disposition, and void of regard for human dignity and security.

 We are unwilling to say that the trial judge should have recused himself from trying this case' for that prior to this trial, when he sentenced a companion participant in this same ordeal, he bemoaned the fact that the law wouldn't permit him to impose a more severe sentence than the maximum of twenty years. There is nothing in the record to indicate bias or partiality in the trial of the case. The imposition of the maximum of twenty years in the instant case was not the product of bias, but was based on the evidence. The defendant, in our judgment, got what he deserved. Defendant's conduct was definitely akin to savagery.

The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under Section 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

We affirm the judgment addendum.

Affirmed.

All the Judges concur.