[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 926 
Appellant was convicted of theft in the second degree and, as a habitual offender, was sentenced to fifty years' imprisonment.
The evidence as produced by the state tended to show the following facts. Late in the afternoon, on November 6, 1981, the appellant entered Lazenby's Firestone in Opelika, Alabama, which was owned by Mr. Elmer Lazenby.
Mr. Lazenby testified that appellant stated he owned a motel in Boaz, Alabama, and wished to buy two television sets. The two men then negotiated a price of $800 for the sets. This price reflected a discount given by Mr. Lazenby to McMurphy in hopes of getting future business from him. Mr. Lazenby failed to get appellant's tax number and thus had to pay sales tax on this sale. Appellant had Mr. Lazenby make out a check payable to Lazenby's for the amount of $800 which McMurphy then signed. Mr. Lazenby studied appellant's driver's license and Social Security card, which were offered as identification, and wrote down the driver's license number and the tag number of the van he was driving. Then he helped appellant load the television sets into the van.
Mr. Lazenby endorsed the check and deposited it into the "Lazenby's" checking account on November 7. On November 13, the check was returned stamped "Account Closed." Mr. Lazenby stated that he usually tried to get in touch with people who owed him money but after finding out that appellant no longer lived at the Boaz address printed on the returned check, and had not lived there for some time, he made no effort to contact McMurphy.
Mr. Lazenby contacted his attorney and then a friend, Judge G.H. Wright, Jr., about the matter. Both men advised Mr. Lazenby to swear out a warrant for McMurphy's arrest. He also testified that he had previously had some instances where he was given bad checks and that some were treated as felonies and some as misdemeanors.
Officer Gary Knight of the Opelika Police Department testified that the determination whether to treat a bad check case as a felony or misdemeanor depended on a number of factors, and the police department often advised the merchant to consult with the District Attorney as to whether felony charges should be brought against the individual who wrote the check. The Lee County Circuit Clerk also testified that the determination as to whether or not a felony warrant would be signed was made by the District Attorney.
Ms. Judy Berry, head bookkeeper of the Sand Mountain Bank of Boaz — the bank on which appellant's check was drawn — testified that the appellant opened a joint checking *Page 927 
account in May, 1981, and arranged for his monthly Social Security check to be directly deposited into the account. She also testified that his account was overdrawn at the end of each accounting period from June through October, 1981, and that the bank had also returned thirty-one checks drawn on the account because of insufficient funds. Ms. Berry testified that the bank attempted to notify appellant by mail that checks drawn on his account had been returned, but that the notices were returned by the Post Office marked "Unclaimed." The bank closed McMurphy's overdrawn checking account and charged the amount to the bank's "Overdraft Losses" account as uncollectible.
Appellant testified that it was never his intention to deceive Mr. Lazenby and that he believed his checking account at the Sand Mountain Bank contained sufficient funds to cover the $800 check. He stated that two Social Security checks were to be deposited in his account each month, and that the bank was in error. McMurphy also stated that when he questioned the bank and attempted to get a monthly bank statement sent to him, the bank told him it did not send out statements on direct deposit accounts. He further testified that he never told Mr. Lazenby he owned a motel, only that he worked for someone who did and that he travelled around the country as an antique dealer.
Appellant was indicted, tried and convicted of theft in the second degree.
 I
Appellant's first contention of error is that the evidence did not sustain a conviction of theft in the second degree.
Section 13A-8-2, Code of Alabama 1975, provides that a person commits the crime of theft of property if he "knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." Theft in the second degree consists of property which exceeds one hundred dollars in value but does not exceed one thousand dollars, Ala. Code §13A-8-4 (1975).
Appellant maintains that the district attorney failed to prove the elements of deception and intent in the case against him. Deception is defined in Ala. Code § 13A-8-1 (1975). If a person knowingly "promises performance which the defendant does not intend to perform or knows will not be performed," a deception occurs. "Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform." Ala. Code § 13A-8-1 (1) (1975).
Generally, Alabama cases which involve deception are pre-Criminal Code cases tried under the charge of false pretenses. The crime of false pretenses now constitutes theft under the new criminal code. St. Paul Fire Marine Ins. Co. v.Veal, 377 So.2d 962 (Ala. 1979); Commentary, Ala. Code §§13A-8-2 through §§ 13A-8-5 "False Pretenses," at 269.
The elements of false pretenses were: (1) the pretense, (2) its falsity, (3) obtaining property by reason of the pretense, (4) knowledge on the part of accused of falsity of the pretense, and (5) intent to defraud. Mitchell v. State,56 Ala. App. 718, 325 So.2d 509 (1975), cert. denied, 295 Ala. 412,325 So.2d 513 (1976); Holloway v. State, 37 Ala. App. 96,64 So.2d 115, cert. denied, 258 Ala. 558, 64 So.2d 121 (1952).
False pretense must have operated as an inducement for the injured party to part with goods or money. Smith v. State,409 So.2d 927 (Ala.Cr.App.), cert. denied, 409 So.2d 930 (Ala. 1981). However, it was not necessary that the false pretense was the sole, exclusive or decisive inducement for the owner's parting with his property; it was sufficient if he would not have parted with it in the absence of the false pretense.Franklin v. State, 44 Ala. App. 521, 214 So.2d 924 (1968). The false pretense must not have been merely the expression of an opinion then entertained by the defendant, but must relate to existing fact, or to fact which has already occurred. Jones v.State, 236 Ala. 30, 182 So. 404 (1938).
The cases of Jones v. State, 55 Ala. App. 651, 318 So.2d 348
(1975), and Eaton *Page 928 v. State, 16 Ala. App. 405, 78 So. 321, 322 (1918), both false pretenses cases, involve circumstances similar to the case at bar. In both cases this court held:
 "The giving of the check, if given without an explanation to the contrary, was in and of itself a representation, symbol, or token that the defendant had money on deposit in the bank on which the check was drawn, and if this check was given with the intent to deceive the seller of the goods in this case, and he was thereby induced to part with the title to his property, and the symbol or token was false, and the seller was thereby deceived, the defendant was guilty."
Based upon our examination of the facts, we find the evidence of deception to be sufficient.
In a theft trial intent is a question for the jury. Craig v.State, 410 So.2d 449 (Ala.Cr.App.), cert. denied, March 19, 1982 (No. 81-415). Furthermore, fraudulent intent need not be proven by direct substantive evidence, but rather, can be inferred from conduct of defendant and circumstances of the case. Cottonreeder v. State, 389 So.2d 1169 (Ala.Cr.App. 1980).
On an appeal from a conviction, this Court is required to consider the evidence in the most favorable light for the prosecution. Smelcher v. State, 385 So.2d 653 (Ala.Cr.App. 1980); Bass v. State, 55 Ala. App. 88, 313 So.2d 208 (1975). As we stated in Bell v. State, 339 So.2d 96, 98 (Ala.Cr.App. 1976):
 "Our function, where sufficiency of the evidence is before us, is to examine the record and determine if the State put on sufficient evidence from which a jury might have found the accused guilty. We must allow all reasonable presumptions for the correctness of the verdict, bearing in mind that conflicting testimony presents a question for the jury. Only when the preponderance of the evidence against the verdict is so decided as to convince this Court that it was wrong and unjust will the verdict be overturned." (Citations omitted.)
The evidence was sufficient to support a conviction. We now look to appellant's second contention.
 II
The appellant next argues that it was unconstitutional for the district attorney to prosecute him for theft, a felony, when the majority of bad checks are prosecuted as misdemeanors under Alabama's "bad check law."
It is clear that the legislature may create two or more criminal offenses which may be committed by a single act.Coleman v. State, 290 Ala. 346, 276 So.2d 589 (1973); Clonts v.State, 42 Ala. App. 287, 161 So.2d 155 (1964).
When such an event occurs, the State may elect to prosecute for either offense, or under either statute. Coleman, supra,290 Ala. at 349, 276 So.2d 589; Smith v. State, 409 So.2d 927
(Ala.Cr.App.), cert. denied, 409 So.2d 930 (Ala. 1981).
Appellant also contends that the vague ways in which the term deception is distinguished as it is applied to felony or misdemeanor cases is constitutionally suspect and encourages arbitrary and erratic arrests and convictions.
The general rule in Alabama is that:
 "In enacting a criminal statute, there is an obligation on the State to so frame it that those who are to administer it and those to whom it is to be administered may know what standard of conduct is intended to be required and legislation may run afoul of the due process clause because of failure to set up any sufficient guidance to those who would be law abiding, or to advise a defendant of the nature and cause of an accusation he is called on to answer, or to guide the courts in the law's enforcement." (Citations omitted.)
Bolin v. State, 266 Ala. 256, 96 So.2d 582 (1957).
This court has previously recognized that "due notice that an act has been made criminal before it is done" is required as well as "sufficiently definite warning as *Page 929 
to the proscribed conduct when measured by common understanding and practices." Quoted in Poe v. State, 389 So.2d 154
(Ala.Cr.App. 1980). We are satisfied that the definition of "deception" in § 13A-8-1, Code of Alabama (1975), meets these standards. We therefore find no merit to appellant's second contention.
 III
Appellant's final contention is that the trial court erred in not granting a motion for mistrial based on the fact that the trial judge presiding over a portion of the proceedings was biased because he had prior knowledge of the facts relating to appellant's trial.
In the absence of a statute to the contrary, a judge is not disqualified to review his own acts. McConnell v. Goodwin,189 Ala. 390, 66 So. 675 (1914).
Alabama law provides for disqualifications of a judge if he has an interest in the outcome, is related to any party within the fourth degree of consanguinity, or has been previously involved as counsel or attorney, without the consent of all parties involved. Ala. Code § 12-1-12 (1975).
As stated by the Alabama Supreme Court in the case of In reRaines [Raines v. State], 294 Ala. 360, 317 So.2d 559 (1975), "pretrial involvement or knowledge on the part of the trial judge does not necessarily create an unconstitutional risk or bias." Id., at 366, 317 So.2d 559. The court went on to quote at length the case of Winthrow v. Larkin, 421 U.S. 35,95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), which stated:
 "Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence." Id., 421 U.S. at 56, 95 S.Ct. at 1469.
The general rule in Alabama is that there is a presumption that a judge is qualified and unbiased and a person who alleges otherwise has the burden of proving that grounds for his allegation. Schillaci v. State, 347 So.2d 556 (Ala.Cr.App.),cert. denied, 347 So.2d 559 (Ala. 1977).
The bias or prejudice which has to be shown before a judge is disqualified must be "personal" bias, and not "judicial" bias. Personal bias, as contrasted with judicial, is an attitude of extra-judicial origin, or one derived non coram judice. In reWhite, 53 Ala. App. 377, 300 So.2d 420 (1977). The fact that one of the parties before the court is known to and thought well of by the judge is not sufficient to show bias. Duncan v.Sherrill, 341 So.2d 946 (Ala. 1977). Neither is the fact that the judge had previously sentenced the defendant's partner in crime to the maximum sentence allowed and bemoaned the fact he could not impose a longer sentence sufficient to constitute proof of bias. Coleman v. State, 57 Ala. App. 75, 326 So.2d 140
(1976). Nor is bias proved simply because the trial judge who presided at the second trial of defendant had also presided at his first trial and heard evidence later found to be inadmissible by an appellate court. Walker v. State,38 Ala. App. 204, 84 So.2d 383 (1955).
In the case before us, the judge with whom Mr. Lazenby discussed the situation did not preside over appellant's entire trial, only a portion of it. That portion merely involved selection of the jury and rulings on motions made prior to the actual commencement of the trial. Nothing in the record indicates that there was any personal bias held by Judge Wright against the appellant which would disqualify him from presiding over this part of the trial.
The decision to grant a motion for mistrial is generally left to the discretion *Page 930 
of the trial judge. The trial judge has heard what has transpired and has seen the scenario unfold, and is thus in a better position to determine whether a mistrial should be declared. Duncan v. City of Birmingham, 384 So.2d 1232
(Ala.Cr.App. 1980). A motion for mistrial implies a miscarriage of justice; therefore, it should only be granted where it is clear that justice cannot be afforded. Diamond v. State,363 So.2d 109 (Ala.Cr.App. 1978).
We have reviewed the evidence before us and have found that the trial judge did not abuse his discretion in this matter. The appellant did not prove any bias of Judge Wright and thus it was not error for the trial judge to deny appellant's motion for a mistrial.
We have reviewed the entire record and find no reversible error therein. In the interest of brevity, we refrain from further discussion of this case. The conviction of the trial court is therefore due to be affirmed.
The foregoing opinion was prepared by Honorable JOSEPH A. COLQUITT, Circuit Judge, temporarily on duty on the Court of Criminal Appeals pursuant to § 12-2-30 (b)(6), Code of Alabama 1975. The Court has adopted his opinion as its own.
AFFIRMED.
All the Judges concur.