Sylvia Lipham, the appellant, was convicted of theft by deception in the first degree. Her sentence of two years' imprisonment was suspended and she was granted probation, contingent upon the payment of $6,253.04 in restitution. On this direct appeal from that conviction she argues that there exists a fatal variance between the allegation stated in the indictment that she obtained control over the victim's checks by deception and the proof at trial that her control of those checks was authorized by the victim.
The indictment charged theft by deception in that the appellant "did knowingly obtain, by deception, control over, to-wit: checks, the property of, to-wit: National Vending Liquidators, Inc." CR. 6.
The evidence was that the appellant was the bookkeeper and office manager for National Vending Liquidators, Inc. (NVL). In that capacity, she was given control and possession of the company checkbook and was authorized to write checks necessary to operate the business.
Mark Shapard was the president and sole owner of NVL. Both he and the appellant were authorized to issue checks drawn on NVL's account and the appellant was authorized to sign Shapard's name. R. 121. According to Shapard, the appellant was authorized to write NVL checks only for "corporate business" and was not authorized to write NVL checks for personal reasons. R. 113, 121.
The State presented evidence that the appellant wrote NVL checks to her credit union for her personal car payments, to a jewelry store to pay her personal account, and to her husband for maintenance work never performed. She also wrote checks overpaying both her own and her husband's salaries and issued duplicate checks for the same services.
There was evidence that the appellant issued NVL checks for both unauthorized expenditures and unauthorized amounts. On some of the "overpayment" checks, the actual amount of the check exceeded the amount indicated on the corresponding check stub. *Page 397 
There was evidence that the appellant verbally misrepresented to Shapard the financial condition of NVL by informing him that everything was "proper" and "in order." R. 122-25. There was also evidence that the appellant had repeatedly assured Shapard that the books were in order. R. 125.
Shapard testified that he would not have continued to employ the appellant had he known of the appellant's unauthorized practices and that the appellant created the false impression that she had been and was using NVL corporate checks only for corporate business.
Theft by deception is defined in Ala. Code 1975, § 13A-8-2(2), as follows: "A person commits the crime of theft of property if he . . . [k]nowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." Section 13A-8-1(1) defines "deception" as follows:
"(1) Deception occurs when a person knowingly:
 "a. Creates or confirms another's impression which is false and which the defendant does not believe to be true; or
 "b. Fails to correct a false impression which the defendant previously has created or confirmed; or
 "c. Fails to correct a false impression when the defendant is under a duty to do so; or
 "d. Prevents another from acquiring information pertinent to the disposition of the property involved. . . ."
Section 13A-8-1(6) defines "obtains" as follows:
"(6) Obtains. Such term means:
 "a. In relation to property, to bring about a transfer or purported transfer of a legally recognized interest in the property, whether to the obtainer or another. . . ."
"Unauthorized control" is not an element of theft by deception. See § 13A-8-2(2).
 "One of the functions of an indictment is to adequately inform the accused of the crime charged so that a defense may be prepared. Ex parte Washington, 448 So.2d 404, 407 (Ala. 1984). A variance in the form of the offense charged in the indictment and the proof presented at trial is fatal if the proof offered by the State is of a different crime, or of the same crime, but under a set of facts different from those set out in the indictment. Ex parte Hightower, 443 So.2d 1272, 1274 (Ala. 1983)."
Ex parte Hamm, 564 So.2d 469, 471 (Ala.), cert. denied,498 U.S. 1008, 111 S.Ct. 572, 112 L.Ed.2d 579 (1990).
It is the opinion of this Court that the State's evidence established that the appellant, through her repeated and false misrepresentations to Shapard, continued her authorized control of the corporate checks and that this evidence is sufficient to meet the allegation of the indictment that the appellant obtained control over NVL checks by deception. This proof conforms to the material allegations in the indictment charging that the appellant obtained control of the checks by deception. "[T]here must be a material variance between indictment and proof before a conviction will be overturned for that reason."Ex parte Collins, 385 So.2d 1005, 1009 (Ala. 1980) (emphasis in original). "The law of this state is well settled that '[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial offense specified therein.' " House v. State, 380 So.2d 940,943 (Ala. 1979). Compare Ex parte Hightower, 443 So.2d 1272
(Ala. 1983) (fatal variance between indictment charging sexual misconduct without consent and proof of sexual misconduct with consent obtained by artifice).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 398