909 So.2d 772 (2004)
Ex parte Warren A. ROSBOROUGH III.
(In re Warren A. Rosborough III
v.
State of Alabama).
1030565.
Supreme Court of Alabama.
November 24, 2004.
Rehearing Denied January 14, 2005.
Glenn L. Davidson of Collins, Davidson, L.L.C., Mobile, for petitioner.
Troy King, atty. gen., Michael B. Billingsley, asst. atty. gen., and Nancy M. Kirby, deputy atty. gen., for respondent.
*773 WOODALL, Justice.
This case is before this Court by way of a writ of certiorari to review the conviction of Warren A. Rosborough III for first-degree theft of property, a violation of § 13A-8-3(a), Ala.Code 1975. The only question raised is whether the statute of limitations for the offense expired before Rosborough was charged. The Court of Criminal Appeals, in an unpublished memorandum, held that the statutory limitations period had not expired when Rosborough was charged. Rosborough v. State (No. CR-02-1854, February 20, 2004), 910 So.2d 833 (Ala.Crim.App.2004)(table). We reverse and remand.
The relevant facts, which are undisputed, are adequately summarized in the State's brief:
"Rosborough is an accountant by trade. . . . For many years, Rosborough prepared yearly income tax returns for his aunt, Ms. Sarah Nixon. In 1995, Rosborough approached Ms. Nixon with an investment offer, promising her a tax-free rate of return of six and one half percent, payments of $218.00 per month, and the full return of her principal amount of $40,226.36. The agreement was to terminate on December 31, 2000. Ms. Nixon signed an Agreement of Guarantee on April 18, 1995 and turned the principal amount of $40,226.36 over to Rosborough.
"On April 19, 1995, one day after taking possession of Ms. Nixon's $40,226.36, Rosborough made a payment of $40,414.00 to the Choctaw County Clerk of Court for restitution in a prior criminal case.
"Rosborough began making monthly `interest' payments to Ms. Nixon on May 15, 1995, as scheduled. Sometimes Rosborough's payments were late but, generally, during the first three years of the agreement, Rosborough made the monthly payments as promised. Beginning in August, 1998, however, Rosborough became [more] erratic in making the payments, sometimes skipping a month and making double payments the following month. Additionally, some monthly payments were missed altogether. The record reflects that June 28, 2000 was the last date Rosborough made a payment to Ms. Nixon.
"After Rosborough quit making payments, Ms. Nixon testified that she tried to contact Rosborough on numerous occasions. She was unsuccessful, however, and Rosborough never returned her principal amount of $40,226.36."
State's brief, at 2-3 (citations to the record omitted).
On September 13, 2001, Rosborough was indicted for first-degree theft of property. However, because the indictment contained fatal errors, the trial court dismissed the charge against Rosborough on August 5, 2002. On September 12, 2002, Rosborough was indicted again for first-degree theft of property. Specifically, that indictment alleged:
"The Grand Jury of said County charge, before the finding of this indictment, Warren A. Rosborough, III, whose name is otherwise unknown to the Grand Jury, did knowingly obtain by deception money, lawful currency of the United States, or check(s), or draft(s), or money orders, a better description of all of which is unknown to the Grand Jury, the property of Sarah Nixon, in excess of $1000.00. . . with the intent to deprive the owner of said property, in violation of § 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama."
(Emphasis added.) The indictment charged Rosborough with what is commonly referred to as theft by deception. See, *774 e.g., Ex parte Stinson, 631 So.2d 831, 832 (Ala.1992). Theft by deception is "substantially similar" to the former crime of obtaining property by false pretenses. State v. R.R.A., 842 So.2d 42, 43 (Ala.Crim. App.2002). The State admits this similarity.
A jury found Rosborough guilty of first-degree theft by deception. The trial court sentenced him to 12 years' imprisonment; it split the sentence and ordered him to serve 18 months' imprisonment, followed by 5 years on supervised probation. Rosborough filed a motion for a new trial, and after the motion was denied by operation of law, he appealed to the Court of Criminal Appeals.
Rosborough presented only one argument to the Court of Criminal Appeals, namely, that his prosecution was barred by the three-year statute of limitations in § 15-3-1, Ala.Code 1975, because, while he obtained the principal from Nixon on April 18, 1995, he was not indicted until September 13, 2001. The Court of Criminal Appeals rejected his argument, reasoning in their unpublished memorandum that Rosborough's actions amounted to a continuing offense, which was not complete until he stopped making the required interest payments in July 2000 and when he did not return the principal to Nixon on December 31, 2000, events occurring less than three years before Rosborough was indicted originally.
Where the facts regarding the commission of the alleged offense are not in dispute, whether the limitations period has expired is a question of law. Ex parte Hunt, 642 So.2d 1060, 1067 (Ala.1994). "[T]he ruling on a question of law carries no presumption of correctness, and this Court's review is de novo." Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).
The State and Rosborough agree that first-degree theft is a Class B felony to which the three-year statutory period of limitations applicable to felonies in general applies. Ala.Code 1975, § 13A-8-3(c); § 15-3-1. Also, they agree that "[a] limitations period runs from the time a crime is committed, which is determined as the time when all of its essential elements are present and complete." Ex parte Hunt, 642 So.2d at 1066. However, the State and Rosborough disagree as to when the essential elements of theft by deception were "present and complete." Rosborough contends that the limitations period began to run on April 18, 1995:
"In this case, all the elements of theft by deception coalesced in April 1995, when Rosborough obtained Nixon's money by making promises to Nixon, knowing that he had no intention of performing those promises, and intending to deprive Nixon of her property. The statute of limitations began to run at that time, and ran out before Rosborough was indicted."
Rosborough's brief, at 14. The State, on the other hand, argues that the crime was not complete, and the statutory limitations period did not begin to run, until Rosborough made his last payment to Nixon:
"Here, Rosborough's deception of Ms. Nixon occurred from the time he promised to invest her money and make monthly `interest' payments until the date he made the last payment. This deception was contemplated and planned by Rosborough as part of the inducement to convince Ms. Nixon to turn her money over to him. The payments to Ms. Nixon were intended to and did in fact continue the deception that her money had been invested and was earning interest according to their agreement, while in fact Ms. Nixon's money had been used to pay Rosborough's restitution *775 in a prior criminal case. Thus, the `interest' payments to Ms. Nixon were part and parcel to the crime and the crime was not complete until the deceptive payments stopped."
State's brief, at 10. We agree with Rosborough.
In Ex parte Stinson, this Court discussed the essential elements of the crime of theft by deception:
"Theft of property in the first degree is a Class B felony, and involves the theft of property exceeding $1000 in value. Section 13A-8-2, Code of Ala.1975, reads:
"`A person commits the crime of theft of property if he:
"`(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property.'
"To make a case of theft by deception, the state must prove three elements: (1) that the defendant knowingly obtained the property; (2) that the defendant obtained the property by deception; and (3) that the defendant intended to deprive the owner of the property. Oliver v. State, 518 So.2d 707 (Ala.Cr.App.1987); Loper v. State, 469 So.2d 707 (Ala.Cr.App.1985)."
631 So.2d at 832 (emphasis added). It is undisputed that Rosborough knowingly obtained Nixon's property on April 18, 1995, with the intent to deprive Nixon of the property. The parties' arguments focus upon the second element  that the defendant obtained the property by deception  and require us to consider whether that element allows the consideration of what the State describes as "repeated misrepresentations subsequent to the transfer of funds." State's brief, at 6.
As previously mentioned, theft by deception is substantially similar to the former crime of obtaining property by false pretenses. An essential element of that offense was "obtaining property by reason of the pretense." McMurphy v. State, 455 So.2d 924, 927 (Ala.Crim.App.1984). Thus, the "[f]alse pretense must have operated as an inducement for the injured party to part with goods or money." Id. Obviously, any false pretense occurring after the victim parted with the property could not operate as an inducement for the victim to part with the property in the first place.
"If the [offense of obtaining property by false pretense] was committed at all, it was committed at the time the alleged false representations were made and the [property] obtained. Subsequent actions of the accused were no part of the res gestae, and could shed no light on the issues involved in the trial of this case. Carlisle v. State, 77 Ala. 71 [(1884)]."
Prentice v. State, 24 Ala.App. 587, 587, 139 So. 437, 438 (1932).
In Ex parte Day, 481 So.2d 1169, 1171 (Ala.1985), relying substantially upon the Court of Criminal Appeals' decision in McMurphy, this Court "h[e]ld that reliance is an element of the offense of theft by deception." Thus, the deception necessary to constitute an offense under § 13A-8-2 necessarily must precede the defendant's obtaining the property from its owner. Consequently, the State's argument, which is based upon deception alleged to have occurred after Nixon turned her money over to Rosborough, is without merit.
The State argues that Rosborough's periodic payments to Nixon amounted to "a continuing deception calculated to prevent [Nixon] from discovering [the] theft." State's brief, at 7. According to the State, "[t]hat Rosborough received all of the stolen *776 money in one transaction does not negate the fact that the deception element of his offense was ongoing." State's brief, at 19. Therefore, according to the State, the limitations period should be computed from the date of the last "deceptive" payment, not from the date of the theft. However, as previously explained, the deception required by § 13A-8-2 necessarily must precede the theft. Also, the State's argument conflicts with the principle that "[k]nowledge on the part of the victim is not required," and "[t]herefore, the date the crime was discovered is irrelevant." Griffin v. State, 352 So.2d 847, 850 (Ala. 1977).
In Griffin, employing a continuous-offense analysis, this Court held that an offense consisting of repeated false representations and the repeated receipt of checks as the result of those misrepresentations was a continuing one, which was not completed until the last check was received. 352 So.2d at 850-51. While the State contends that its continuing-offense argument is logically consistent with the holding in Griffin, we disagree. In Griffin, unlike in this case, property was obtained after each misrepresentation, and the defendant obtained property within the limitations period.
For the foregoing reasons, we hold that the limitations period began to run on April 18, 1995, when Rosborough obtained Nixon's money. Therefore, the limitations period expired long before Rosborough was indicted on September 13, 2001. For that reason, the Court of Criminal Appeals erred in affirming the trial court's judgment. The judgment of the Court of Criminal Appeals is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, JOHNSTONE, and HARWOOD, JJ., concur.
NABERS, C.J., and SEE, BROWN, and STUART, JJ., dissent.
NABERS, Chief Justice (dissenting).
I respectfully dissent.
This case of first impression presents the issue of when the statute of limitations begins to run in a theft-by-deception case where the transfer of property occurred outside the three-year statutory limitations period but was part of a continuing transaction that fell within the limitations period.
The rationale of the Court of Criminal Appeals in its unpublished memorandum affirming Rosborough's conviction is that because the deception continued beyond the transfer of the principal amount of $40,226, "[Rosborough's] actions constituted a continuing offense" and "the offense was not complete" until July 2000, when Rosborough ceased making the payments required under the agreement with Sarah Nixon, and Rosborough was then indicted within the three-year statute of limitations. Rosborough v. State (No. CR-02-1854, Feb. 20, 2004), 910 So.2d 833 (Ala.Crim.App.2004)(table).
The majority opinion disagrees with the Court of Criminal Appeals and holds that "the deception necessary to constitute an offense under § 13A-8-2 necessarily must precede the defendant's obtaining the property from its owner." Because the property, $40,226 cash, was transferred outside the three-year statutory limitations period, the majority reverses the Court of Criminal Appeals' judgment.
Although I agree with the majority opinion that because the crime is "obtaining" the property, the deception used to obtain it logically must precede receipt of the *777 property, I think the Court of Criminal Appeals' judgment should be affirmed in accordance with the guidance given us in Griffin v. State, 352 So.2d 847 (Ala.1977), and Alabama State Bar v. Chandler, 611 So.2d 1046 (Ala.1992). In Griffin, the defrauded party made two installment payments to Griffin in conjunction with a real-estate transaction, one on August 24, 1971, and a second in August or September 1972. The defrauded party instituted an action against Griffin on January 30, 1975. The first payment was outside the three-year statutory limitations period; the second payment was within it. Griffin contended that the statute of limitations had expired before the prosecution was commenced because, he argued, the statutory limitations period began to run from the date of the first payment. Our Court found that both payments were made pursuant to a continuing transaction; it applied the statute of limitations to the "final act" of the continuing transaction. We stated:
"Both payments were part of the same transaction. . . .
". . . [I]t is unimportant that the first payment, if taken alone, would be beyond the statutory period; and this for the reason that where the offense is continuous, the statute of limitations does not apply where some portion of the crime is within the period, although another portion thereof is not. United States v. Andreas, [458 F.2d 491 (8th Cir.1972)], People v. Adams, 106 Ill.App.2d 396, 245 N.E.2d 904 (1969); and 22 C.J.S. Criminal Law § 227(1).
". . . .
". . . [B]ecause the case was commenced within three years from the final act of the continuing transaction, thus complying with the statute of limitations, the decision of the Court of Criminal Appeals is due to be affirmed."
352 So.2d at 850-51.
The rationale of Griffin was buttressed in Alabama State Bar v. Chandler, supra, in which this Court stated:
"`In contrast to the instantaneous nature of most crimes, a continuing offense is one which consists of a course of conduct enduring over an extended period of time. Note, Statute of Limitations in Criminal Law: A Penetrable Barrier To Prosecution 102 Pa.L.Rev. 630, 641-642 (1954).' John v. State, 96 Wis.2d 183, 188, 291 N.W.2d 502, 505 (1980). `Even if the initial unlawful act may itself embody all of the elements of the crime, the criminal limitations period commences from the most recent act.' 96 Wis.2d at 188, 291 N.W.2d at 505.
"Because the continuing offense concept, by extending limitations periods, conflicts with the policies and principles on which limitations periods are based, the concept `should be applied in only limited circumstances,' Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970) (refusal to register for the draft not a continuing offense), such as when required by the `explicit language of the substantive criminal statute,' id. at 115, 90 S.Ct. at 860, or by the inherent `nature of the crime involved.' Id."
611 So.2d at 1048.
Here I find a continuing transaction that justifies the application of the continuing-offense concept approved in Griffin and Chandler.
The duration and scope of the transaction is well defined in the contract between Sarah Nixon and Rosborough and in a letter from Rosborough to Nixon, written after Rosborough had misapplied Nixon's money to pay off his personal debt. I quote them both. The contract provides:

*778 "Investor agrees to appoint and assign all her interest in her princip[al] of forty thousand two hundred twenty-six and 36/100 dollars ($40,226.36), and Agent agrees to receive and manage the princip[al] for the benefit of the Investor and her assigns in accordance with the terms and provisions contained herein.
"The Investor stipulates that the princip[al] is to be invested to yield an annual return of no less than six and one-half percent (6.5%) of the princip[al] free of federal and Alabama taxes, except for the taxes on capital gains if any, as currently defined in the Internal Revenue Code and the Code of Alabama, and that the princip[al] is to be guaranteed throughout the term of this agreement. The income is to be deposited monthly to the bank account of the Investor as from time to time may be stipulated.
". . . .
"The Agent agrees to manage the Investor's princip[al] to yield an annual return as stipulated above and to guarantee the yield and princip[al] for the duration of this agreement.

"The term and duration of this agreement extends from the date of the agreement as indicated above until the 31st day of December, 2000. On that date the Agent's appointment and assignment ceases.
"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals on the 18th day of April, 1995.
"INVESTOR: AGENT:
"SARAH ALICE NIXON WARREN A. ROSBOROUGH, III"
(Emphasis added.)
The letter reads as follows:
"May 1, 1995
"Ms. Sarah Alice Nixon 2218 20th Street Northport, Alabama 35476
"Dear Aunt Alice,
"I wanted to let you know the status on your income from the $40,226.36. The yield on your investment is 6.5% annually tax free. This equates to a taxable CD yielding 8.52% annually. Your monthly deposit to your checking account at Tuscaloosa Teachers Credit Union, account number XXXXXXXX, will be $218.00. This amount will be deposited on or about the 15th of each month beginning with the month of May.
"Originally the first income payment was scheduled for the month of June. This was because the investment had to have one calendar month to earn income in order for the income to be distributed in the following month. However, since I had indicated to you that the first payment would begin in May, I have arranged for the first payment to be advanced.
". . . .
 "Sincerely yours,
 "ROSBOROUGH and COMPANY
 "Warren A. Rosborough, III"
The contract makes clear that the $40,226 was obtained through a transaction that was to extend from April 18, 1995, through December 31, 2000. This whole contractual scheme extending over some 62 months until Rosborough ceased making payments is the key to, in the words of *779 the statute, Rosborough's "knowingly obtain[ing] by deception control over the property of another, with intent to deprive the owner of his or her property."
This is not simply a theft followed by a series of deceptive acts to cover it up. If it were, the majority's opinion would be persuasive. Rather, it is a theft conceived and carried out through a contract, which by its terms continued beyond the theft and provided cover for Rosborough's deception. The contract was part and parcel of the crime. Every penny of the $40,226 was "obtained" by Rosborough under the contract. The transaction created by the contract extended by its terms through December 2000.
I would hold that in a theft-by-deception case where property is obtained pursuant to a continuing and deceptive scheme set forth in a contract crafted to effectuate the transfer of the property and to cover up the theft through means defined as "deception" by Ala.Code 1975, § 13A-8-1(1)(a) through (f), the statute of limitations does not begin to run until the thief has completed his "final act" of performance under the contract.
In Chandler we indicated that we should not apply the continuing-transaction approach except in limited circumstances. The rationale asserted in this dissent is limited to a theft by deception where a contract establishes a continuing transaction through which the property is obtained and its theft is covered up, and where the thief performs under the contract through a point in time so as to bring the offense within the statutory period of limitations. This result does no violence to the statute of limitations. Rosborough crafted the contract to obtain the $40,226 and by his own volition continued his performance and deception under the contract.
Because Rosborough continued in his participation in the theft through June 28, 2000, and because the indictment was returned within three years of that date, I would affirm the judgment of the Court of Criminal Appeals. Therefore, I must dissent.
SEE, Justice (dissenting).
I respectfully dissent.
I agree with Chief Justice Nabers's dissent that this was "a theft conceived and carried out through a contract, which by its terms continued beyond the theft and provided cover for Rosborough's deception. The contract was part and parcel of the crime." 909 So.2d at 779.
The contract created a scheme of deception. Sarah Nixon relied on that scheme before parting with her $40,226.36 for what she believed would be a period of 68 months. She believed that Rosborough would invest that principal amount and then return it to her. Because of the terms of the contract, Nixon continued to rely on the scheme of deception until Rosborough abandoned the scheme in July 2000. Thus, Rosborough was able to induce a continuing reliance by Nixon that enabled him to retain her money. In this case, where the scheme of deception induced the initial payment and also the continuing reliance, the original payment was made in continuing reliance as part of a continuing deception. Thus, I believe that the continuing-offense doctrine applies here because of the "inherent `nature of the crime involved.'" Alabama State Bar v. Chandler, 611 So.2d 1046, 1048 (Ala.1992). Because the offense, including Nixon's reliance, continued under the scheme of deception, the limitations period did not begin to run until the scheme ended in July 2000.
*780 BROWN, Justice (dissenting).
I respectfully dissent. I believe that Rosborough's actions constituted a continuing offense and that the statute of limitations did not begin to run until he stopped making the "interest" payments.
"To make a case of theft by deception, the state must prove three elements: (1) that the defendant knowingly obtained the property; (2) that the defendant obtained the property by deception; and (3) that the defendant intended to deprive the owner of the property." Ex parte Stinson, 631 So.2d 831, 832 (Ala.1992). These three elements mirror the language of Ala.Code 1975, § 13A-8-2(2), which defines the crime of theft of property: "A person commits the crime of theft of property if he or she . . . [k]nowingly obtains by deception control over the property of another, with intent to deprive the owner of his or her property."
Alabama Code 1975, § 13A-8-1(1), defines "deception" as follows:
"(1) Deception occurs when a person knowingly:
"a. Creates or confirms another's impression which is false and which the defendant does not believe to be true; or
"b. Fails to correct a false impression which the defendant previously has created or confirmed; or
"c. Fails to correct a false impression when the defendant is under a duty to do so; or
"d. Prevents another from acquiring information pertinent to the disposition of the property involved; or
"e. Sells or otherwise transfers or encumbers property, failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property when the defendant is under a duty to do so, whether that impediment is or is not valid, or is not a matter of official record; or
"f. Promises performance which the defendant does not intend to perform or knows will not be performed. Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform."
Every "interest" payment Rosborough made to his aunt, Sarah Nixon, created or confirmed impressions that were false and prevented Nixon from acquiring information pertinent to the disposition of her property. Rosborough repeated and continued his "deception"in terms of Ala. Code 1975, § 13A-8-2  every time he made a payment.
"`In contrast to the instantaneous nature of most crimes, a continuing offense is one which consists of a course of conduct enduring over an extended period of time. Note, Statute of Limitations in Criminal Law: A Penetrable Barrier To Prosecution, 102 Pa. L.Rev. 630, 641-642 (1954).' John v. State, 96 Wis.2d 183, 188, 291 N.W.2d 502, 505 (1980). `Even if the initial unlawful act may itself embody all of the elements of the crime, the criminal limitations period commences from the most recent act.' 96 Wis.2d at 188, 291 N.W.2d at 505."
Alabama State Bar v. Chandler, 611 So.2d 1046, 1048 (Ala.1992) (emphasis added). Rosborough's conduct in this case was not a crime of an instantaneous nature; rather, it was a course of conduct continuing over five years. The statute of limitations did not begin to run until Rosborough stopped making periodic payments in July 2000; thus, his indictment in September 2001 was timely.
STUART, Justice (dissenting).
I agree with Chief Justice Nabers and Justices See and Brown that the facts of this case bring it within the continuing-offense *781 doctrine. As Justice Brown emphasizes in her dissent in which she quotes this Court's holding in Alabama State Bar v. Chandler, 611 So.2d 1046, 1048 (Ala. 1992), "`"[e]ven if the initial unlawful act may itself embody all of the elements of the crime, the criminal limitations period commences from the most recent act."'" 611 So.2d at 1048.
Indeed, the Court of Criminal Appeals in Lipham v. State, 616 So.2d 396 (Ala. Crim.App.1993), applied the continuing-offense doctrine to the offense of first-degree theft by deception in an analogous situation. In Lipham, a bookkeeper/office manager for a corporation was authorized to write checks on the corporate account; those checks were to be used for corporate business. The bookkeeper, however, wrote numerous unauthorized checks on the corporate account for her personal use. To cover her misuse of corporate funds, the bookkeeper orally misrepresented to the president of the corporation "the financial condition of [the corporation] by informing him that everything was `proper' and `in order.'" 616 So.2d at 397. The president testified that the bookkeeper "created the false impression that she had been and was using . . . corporate checks only for corporate business" and that he had relied on her repeated misrepresentations to that effect, because if he had known of her unauthorized practices, he would have terminated her employment. 616 So.2d at 397. The Court of Criminal Appeals held that while unauthorized control is not an element of theft by deception, the bookkeeper "through her repeated and false misrepresentation to [the president], continued her authorized control of the corporate checks" and that that evidence was sufficient to establish that she "obtained control of the [corporate] checks by deception." 616 So.2d at 397. See also Loper v. State, 469 So.2d 707, 710 (Ala.Crim.App.1985)(noting that the defendant had "strung [the victims] along . . . by telling them one tale after another" and that deception had continued over a year and a half after the defendant had obtained control over the victim's money).
Here, evidence indicating that Rosborough obtained control over Sarah Nixon's money by deception is exhibited through his monthly interest payments to Nixon. Rosborough's payments continually confirmed Nixon's false impression that her money was invested in accordance with the contract between her and Rosborough, and his repeated misrepresentations allowed him to maintain his authorized control over Nixon's money. Thus, just as the defendant in Lipham continued her authorized control of the corporate checking account by making false representations to the president, Rosborough continued his authorized control of Nixon's money by making interest payments. Rosborough's interest payments established the required authorized control for him to continue the theft by deception. Therefore, in this case, the continuing-offense doctrine is applicable.
Our theft-by-deception statute, § 13A-8-2, Ala.Code 1975, is broad enough to include situations such as this one. The majority's holding that the deception must always be complete before the taking and its rejection of the principles set forth in Griffin v. State, 352 So.2d 847, 850 (Ala. 1977), is too tenuous. "Deception occurs when a person knowingly . . . [c]reates or confirms another's impression which is false and which the defendant does not believe to be true." § 13A-8-1(1)(a), Ala. Code 1975. Black's Law Dictionary defines "confirm," in part, as: "To verify or corroborate . . . [t]o make firm or certain." Black's Law Dictionary 318 (8th ed. 2004). Thus, the Legislature, by including as a form of deception a defendant's "confirming" the victim's impression, established *782 that the offense of theft by deception could involve situations in which the defendant makes misrepresentations before taking the property and continues the deception by making repeated misrepresentations subsequent to the taking of the property.
Here, Rosborough made misrepresentations to Nixon to obtain authorized control of her money. Then by making interest payments to Nixon he verified or corroborated the false impression he created. Nixon's reliance on Rosborough's misrepresentations made in the agreement she entered into with him permitted Rosborough to obtain the money; Nixon's reliance on Rosborough's misrepresentations made by his paying her the interest required by the agreement allowed Rosborough to maintain his control over her money. Rosborough's misrepresentations and Nixon's reliance were continual. Thus, while Rosborough's initial unlawful act to obtain Nixon's money embodied all of the elements of theft by deception, the criminal limitations period began to run in July 2000, when Rosborough ceased making interest payments.
The cases cited by the majority are factually distinguishable. They do not involve continual misrepresentations by the defendant made before and after the defendant obtained the property and reliance by the victim on those repeated misrepresentations before and after the defendant acquired the property. See Ex parte Day, 481 So.2d 1169 (Ala.1985)(defendant misrepresented that cubic zirconia was diamond to persuade agent to purchase stone); Ex parte Stinson, 631 So.2d 831 (Ala.1992)(defendant presented a worthless check to obtain property); Ex parte Oliver, 518 So.2d 705 (Ala.1987)(defendant presented a worthless check to obtain property); McMurphy v. State, 455 So.2d 924 (Ala.Crim.App.1984)(defendant presented a worthless check to obtain property); and Carlisle v. State, 77 Ala. 71 (1884)(misrepresentation was made before defendant obtained the money, and testimony that defendant offered to repay the money two or three weeks after he obtained it was properly excluded). Unlike those cases in which the misrepresentations occurred only before the defendant obtained control of the property, Rosborough, by making the interest payments to Nixon, engaged in continual deception after he obtained her money by confirming Nixon's impression that he would return the money. Our statute is broad enough to encompass such acts of continual deception.
Lastly, I note that if the State had tried to prosecute Rosborough while he was making the interest payments and before the principal was due, as the majority opinion would require, a trial court would have immediately granted a motion for a judgment of acquittal because no crime had been committed  the State would not be able to produce evidence of Rosborough's intent to deprive Nixon of her money. The agreement between Rosborough and Nixon dictates that Rosborough had authorized control of Nixon's money so long as he made the interest payments. Only when Rosborough discontinued his misrepresentations by failing to make the interest payments did evidence of his intent to deprive exist.[1]
*783 Because I believe that the statute of limitations did not begin to run until Rosborough discontinued his misrepresentations by failing to make the interest payments and that the State prosecuted Rosborough for theft by deception within three years of Rosborough's most recent act, I respectfully dissent.
NOTES
[1] I reject the argument that evidence of Rosborough's intent to deprive Nixon of her property existed because it appears that Rosborough used Nixon's money to pay restitution in a prior criminal case against him. This fact provides motive for Rosborough's theft by deception, but it does not establish his intent or, in light of the agreement, that he had unlawful control of the money at that time. Indeed, when Rosborough entered into the agreement with Nixon and used the money to pay the restitution, he could have had an independent source of money from which he could repay Nixon that would not become available until a later date.