942 So.2d 392 (2005)
Floyd Wesley BUSH
v.
STATE of Alabama.
CR-04-1789.
Court of Criminal Appeals of Alabama.
November 23, 2005.
Rehearing Denied January 13, 2006.
*394 Jenny R. Ryan and James O. Standridge, Tuscaloosa, for appellant.
Troy King, atty. gen., and Robin Blevins Scales, asst. atty. gen., for appellee.
BASCHAB, Judge.
The appellant, Floyd Wesley Bush, was convicted of four counts of first-degree theft of property, violations of § 13A-8-3(a), Ala.Code 1975, and one count of second-degree theft of property, a violation of § 13A-8-4(a), Ala.Code 1975. The trial court sentenced him to serve concurrent terms of fifteen years in prison on the first-degree theft of property convictions, but split those sentences and ordered him to serve three years followed by twelve years on probation. It also sentenced him to serve a concurrent term of five years in prison on the second-degree theft of property conviction. The appellant did not file any post-trial motions. This appeal followed.
The following facts are essential to an understanding of this case:
The evidence at trial indicated that the appellant operated the Memorial Gardens Cemetery in Guin and the Memorial Gardens Cemetery in Hamilton; that, between 1997 and 2002, the appellant had contracted with the victims for various goods and services with relation to the two cemeteries; that the appellant did not perform as promised with regard to the contracts; and that the appellant had filed for bankruptcy in March 2003.
In February 2004, the appellant was charged in a fourteen count indictment with five counts of first-degree theft of property and nine counts of second-degree theft of property. Before his trial began, Counts 1 through 7 of the indictment were dismissed. Subsequently, the appellant was convicted of first-degree theft of property pursuant to Count 8 of the indictment for the theft of property belonging to Jessie and William Pridmore in connection with the purchase of a grave marker; first-degree theft of property pursuant to Count 9 of the indictment for the theft of property belonging to Lexie Aycock for the opening and closing of a vault; first-degree theft of property pursuant to Count 12 of the indictment for the theft of property belonging to Billy Roy Palmer for the purchase of a grave marker; second-degree theft of property pursuant to Count 13 of the indictment for the theft of property belonging to Lonnie D. Mays for the purchase of a grave marker; and first-degree theft of property pursuant to Count 14 of the indictment for the theft of property belonging to Sarah Hazel Harbin for the purchase of burial plots.[1]

I.
Count 14 of the indictment charged the appellant with first-degree theft of property based on the sale of burial plots to Sarah Harbin. During the trial, Harbin testified that, in 1997, she and her husband purchased two burial plots at the Memorial *395 Gardens in Guin; that she and her husband had set up payments on her plots; that, in 1997 or 1998, she paid $750 for the plots; that her husband died on September 18, 2003; that, after her husband died, she took her contracts to the cemetery and was told that she had not been assigned any plot numbers; that her name and her husband's name were not on a list of plot owners; and that she had to purchase additional plots from a third party to bury her husband.
At trial, the State introduced into evidence a copy of the contract between James and Sarah Hardin and "Heritage Memorial Gardens of Gu-Win, Alabama." (C.R. 119.) The contract provided for the purchase of two interment spaces for $750 and was dated November 5, 1997. The contract indicated that the Hardins paid a $150 down payment on the spaces; that the remaining $600 was financed for a twelve month period; that the Hardins were scheduled to pay $50 a month; and that the first payment was due on December 1, 1997. Therefore, the Hardins' last payment on the grave plots was due on December 1, 1998.
Count 14 of the indictment charged the appellant with theft by deception. The statute of limitations for the offense of theft of property is three years. See Ex parte Rosborough, 909 So.2d 772 (Ala.2004) (citing §§ 13A-8-3(c) and 15-3-1, Ala. Code 1975). In Rosborough, the Alabama Supreme Court addressed the issue of when the statute of limitations begins to run in a case of theft by deception. The facts presented in that case established that, on April 18, 1995, Rosborough and the victim entered into an agreement for Rosborough to invest the victim's money, and the victim gave Rosborough $40,276.00. The agreement provided that Rosborough would make monthly interest payments to the victim until December 2000 and that, at that time, the full amount of principal would be returned to the victim. Rosborough initially made interest payments to the victim. However, he completely stopped making interest payments to the victim approximately four months before the agreement was scheduled to end, and he did not return the principal to the victim. Rosborough was subsequently charged with first-degree theft by deception. The supreme court addressed the issue of the statute of limitations in a theft by deception case as follows:
"Rosborough presented only one argument to the Court of Criminal Appeals, namely, that his prosecution was barred by the three-year statute of limitations in § 15-3-1, Ala.Code 1975, because, while he obtained the principal from Nixon on April 18, 1995, he was not indicted until September 13, 2001. The Court of Criminal Appeals rejected his argument, reasoning in their unpublished memorandum that Rosborough's actions amounted to a continuing offense, which was not complete until he stopped making the required interest payments in July 2000 and when he did not return the principal to Nixon on December 31, 2000, events occurring less than three years before Rosborough was indicted originally.
"Where the facts regarding the commission of the alleged offense are not in dispute, whether the limitations period has expired is a question of law. Ex parte Hunt, 642 So.2d 1060, 1067 (Ala. 1994). `[T]he ruling on a question of law carries no presumption of correctness, and this Court's review is de novo.' Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).
"The State and Rosborough agree that first-degree theft is a Class B felony to which the three-year statutory period of limitations applicable to felonies *396 in general applies. Ala.Code 1975, § 13A-8-3(c); § 15-3-1. Also, they agree that `[a] limitations period runs from the time a crime is committed, which is determined as the time when all of its essential elements are present and complete.' Ex parte Hunt, 642 So.2d at 1066. However, the State and Rosborough disagree as to when the essential elements of theft by deception were `present and complete.' . . .
"`. . . . '
"In Ex parte Stinson[ 631 So.2d 831 (Ala.1992)], this Court discussed the essential elements of the crime of theft by deception:
"`Theft of property in the first degree is a Class B felony, and involves the theft of property exceeding $1000 in value. Section 13A-8-2, Code of Ala.1975, reads:
"`"A person commits the crime of theft of property if he:
"`"(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property."
"`To make a case of theft by deception, the state must prove three elements: (1) that the defendant knowingly obtained the property; (2) that the defendant obtained the property by deception; and (3) that the defendant intended to deprive the owner of the property. Oliver v. State, 518 So.2d 707 (Ala.Cr.App.1987); Loper v. State, 469 So.2d 707 (Ala.Cr.App. 1985).'
"631 So.2d at 832 (emphasis added). It is undisputed that Rosborough knowingly obtained Nixon's property on April 18, 1995, with the intent to deprive Nixon of the property. The parties' arguments focus upon the second elementthat the defendant obtained the property by deceptionand require us to consider whether that element allows the consideration of what the State describes as `repeated misrepresentations subsequent to the transfer of funds.' State's brief, at 6.
"As previously mentioned, theft by deception is substantially similar to the former crime of obtaining property by false pretenses. An essential element of that offense was `obtaining property by reason of the pretense.' McMurphy v. State, 455 So.2d 924, 927 (Ala.Crim.App. 1984). Thus, the `[f]alse pretense must have operated as an inducement for the injured party to part with goods or money.' Id. Obviously, any false pretense occurring after the victim parted with the property could not operate as an inducement for the victim to part with the property in the first place.
"`If the [offense of obtaining property by false pretense] was committed at all, it was committed at the time the alleged false representations were made and the [property] obtained. Subsequent actions of the accused were no part of the res gestae, and could shed no light on the issues involved in the trial of this case. Carlisle v. State, 77 Ala. 71 [(1884)].'

"Prentice v. State, 24 Ala.App. 587, 587, 139 So. 437, 438 (1932).
"In Ex parte Day, 481 So.2d 1169, 1171 (Ala.1985), relying substantially upon the Court of Criminal Appeals' decision in McMurphy, this Court `h[e]ld that reliance is an element of the offense of theft by deception.' Thus, the deception necessary to constitute an offense under § 13A-8-2 necessarily must precede the defendant's obtaining the property from its owner. Consequently, the State's argument, which is based upon deception alleged to have occurred after Nixon turned her money over to Rosborough, is without merit.

*397 "The State argues that Rosborough's periodic payments to Nixon amounted to `a continuing deception calculated to prevent [Nixon] from discovering [the] theft.' State's brief, at 7. According to the State, `[t]hat Rosborough received all of the stolen money in one transaction does not negate the fact that the deception element of his offense was ongoing.' State's brief, at 19. Therefore, according to the State, the limitations period should be computed from the date of the last `deceptive' payment, not from the date of the theft. However, as previously explained, the deception required by § 13A-8-2 necessarily must precede the theft. Also, the State's argument conflicts with the principle that `[k]nowledge on the part of the victim is not required,' and `[t]herefore, the date the crime was discovered is irrelevant.' Griffin v. State, 352 So.2d 847, 850 (Ala.1977).
"In Griffin, employing a continuous-offense analysis, this Court held that an offense consisting of repeated false representations and the repeated receipt of checks as the result of those misrepresentations was a continuing one, which was not completed until the last check was received. 352 So.2d at 850-51. While the State contends that its continuing-offense argument is logically consistent with the holding in Griffin, we disagree. In Griffin, unlike in this case, property was obtained after each misrepresentation, and the defendant obtained property within the limitations period.
"For the foregoing reasons, we hold that the limitations period began to run on April 18, 1995, when Rosborough obtained Nixon's money. Therefore, the limitations period expired long before Rosborough was indicted on September 13, 2001."
909 So.2d at 774-76.
The evidence in this case indicated that the Hardins made their last payment on the grave plots in 1998. Therefore, the statute of limitations began to run in 1998.[2] However, the indictment against the appellant was not filed until February 24, 2004. Therefore, with regard to the charge included in Count 14, the indictment was filed well after the three year statute of limitations for first-degree theft of property had expired. "The statute of limitations is jurisdictional and an indictment filed after the expiration of the limitations period is void. Ex parte Campbell, 784 So.2d 323, 324 (Ala.2000)." Zimlich v. State, 872 So.2d 881, 885-86 (Ala.Crim.App.2003). Accordingly, Count 14 of the indictment was void, and the trial court did not have jurisdiction to render a judgment and impose a sentence with regard to that count.

II.
The appellant argues that the trial court erroneously admitted into evidence *398 State's Exhibits 2 and 3, which were contracts between J.R. and Maudie P. Aycock and West Alabama Memorial Gardens, Inc., of Marion County, Alabama, and between J.R. and Paralee Aycock and West Alabama Memorial Gardens, Inc., of Marion County, Alabama. Specifically, he contends that the State did not properly authenticate those contracts.[3]
"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
Rule 901(a), Ala. R. Evid. During the trial, Lexie Aycock testified that J.R. Aycock was his father; that his father died in April 2003; that, after his father died, he took a contract for opening and closing a vault to the Memorial Gardens in Weston and gave it to Betty Prestridge; that it was his understanding that his father had paid for a marker and for the opening and closing of a vault; that Hamilton Memory Gardens did not honor the contract for opening and closing the vault; and that he had to pay someone else to open and close the vault for his father.
In this case, the State did not present any evidence to authenticate the contracts in State's Exhibit 2 and 3. Before the contracts were admitted, Lexie Aycock testified only that his mother had given him the contracts in question. However, Aycock testified that he was not present when the contracts were signed. Further, the prosecutor asserted that the contracts had been taken from the cemetery files. However, the State did not present any evidence regarding who had obtained the cemetery files or the circumstances regarding the seizure of the files. Finally, the State did not present any evidence to indicate that the contracts that were admitted into the evidence were actually the contracts that the parties had executed. In fact, Count 9 of the indictment alleged that the basis for the theft of property charge in that case was payment for the opening and closing of a vault. However, neither of the Aycock contracts that were admitted into evidence provided for the opening and closing of a vault. Because the Aycock contracts did not fit within any of the categories of self-authenticating documents set forth in Rule 902, Ala. R. Evid., they were not self-authenticating. Because the Aycock contracts were not properly authenticated, the trial court erred when it admitted State's Exhibits 2 and 3 into evidence. Because those documents formed the basis for the appellant's conviction in Count 9 of the indictment, we reverse the appellant's conviction and sentence for first-degree theft of property based on Count 9 of the indictment and remand this case for proceedings that are consistent with this opinion.

III.
The appellant argues that the State did not prove venue for each of the offenses.[4]

*399 "The burden of proof regarding venue is on the State, and the State may establish venue by circumstantial evidence. Ex parte East, 584 So.2d 496, 498 (Ala. 1991); Willcutt v. State, 284 Ala. 547, 550, 226 So.2d 328, 330 (1969). This Court has held that, `"A conviction in a criminal case can never be had except upon proof of the venue, and this need not be proved by direct evidence, but evidence from which it may be inferred is sufficient; but the venue of a crime should never be left in doubt, nor supplied by inference, when it may be readily proved."' Ex parte Jones, 519 So.2d 589, 590 (Ala.1987), quoting Mayhall v. State, 22 Ala.App. 223, 225, 114 So. 361, 363 (1927), citing Walker v. State, 153 Ala. 31, 45 So. 640 (1908), rev'd on other grounds, 184 Ala. 26, 63 So. 1010 (1913) (emphasis added).
"When there is conflicting evidence as to venue, whether the State has proven venue is a question for the jury. Ex parte East, supra. However, when no evidence as to venue has been presented, the question is one for the court. Ex parte Day, 584 So.2d 493, 496 (Ala.1991); Ex parte East, supra. In that event, upon proper motion, the court may, and should, take the issue of venue from the jury and enter a directed judgment of acquittal for the defendant. Failure to prove venue is ground for reversal. Ex parte Jones, 519 So.2d at 590."
Ex parte Russell, 844 So.2d 536, 538 (Ala. 2002).
With regard to Count 8 of the indictment, Willene Pridmore testified that she and her husband, James Pridmore, had plots at Memorial Gardens in Guin; that she and her husband purchased a marker from the appellant; that they signed the contract for the marker on June 11, 2002; that they paid $1,500 for the marker; that the marker was supposed to have been placed between six and eight weeks later; that, as of the time of trial, the marker still had not been placed; that she talked to the appellant about the marker, he asked if she wanted it right then, and she told him that she did; that the appellant did not tell her why the marker had not been placed; that the appellant said only that he had not gotten around to it; that her husband died on December 21, 2004; and that the marker was not down when her husband died. She also testified that she had signed a contract for the opening and closing of the grave and that, when her husband died, they had to pay again to have the grave opened and closed.
With regard to Count 12 of the indictment, Billy Roy Palmer testified that he had a plot at the Memorial Gardens Cemetery in Guin; that, on March 8, 2002, he purchased a double marker from the appellant; that he paid the appellant $1,800 for the marker at that time; that he asked that the marker be put down; that the appellant told him it would be six months before he got the marker; that, after the six months had passed, he asked the appellant about the marker; that the appellant told him that he had had a heart attack, that he did not have very good help, and that the marker had not been ordered; that, a couple of days later, the appellant told him that he had ordered the marker; that, in March 2003, he went back to the cemetery, and the marker was still not there; and that the marker was never put down.
With regard to Count 13 of the indictment, Mary Mays testified that, in October 2001, she and her son, Lonnie Mays, purchased a grave site, the opening and closing of a vault, and a grave marker from the appellant; that the cost of the marker was $1,495; that she talked to the appellant on several occasions and told him that she wanted him to put down the marker; *400 that the appellant told her that he would put it down and that she did not have anything to worry about; and that, at the time of trial, the marker had not been put on the grave site. She also testified that she paid $500 down for the marker; that the appellant told her that he would put the marker down after she paid the full amount; that she then paid $100 a month for the marker; that she made her final payment of $200 on November 5, 2002; that the appellant came to her house on that date, and she gave him the final payment; that the appellant told her that he had ordered the marker; and that she had mailed her other payments for the marker.
Although Willene Pridmore, Billy Roy Palmer, and Mary Mays testified that they had purchased grave markers from the appellant for their burial plots in the Memorial Gardens Cemeteries in Guin and Hamilton, they did not testify as to where those transactions took place. Mary Mays did testify that she had mailed in payments for her grave marker and that the appellant had come to her house to collect her final payment on the grave marker. However, she did not testify as to where she had mailed the payments or where she lived, and the contract that was introduced into evidence included only her son's address. Further, although the State introduced the contracts between each of the victims and West Alabama Memorial Gardens, Inc., of Marion County, Alabama, nothing in those contracts indicated where they were executed. Finally, although the State presented evidence that both of the cemeteries in question were in Marion County, it did not present any evidence to show that the transactions that formed the basis for Counts 8, 12, and 13 took place at those cemeteries. Therefore, the State did not present either direct evidence or circumstantial evidence to prove that venue was proper in Marion County. Accordingly, we must reverse the trial court's judgment and render a judgment for the appellant on the first-degree theft of property convictions pursuant to Counts 8 and 12 of the indictment and the second-degree theft of property conviction pursuant to Count 13 of the indictment.
For the above-stated reasons, we reverse the appellant's first-degree theft of property convictions based on Counts 8, 12, and 14 of the indictment and his second-degree theft of property conviction pursuant to Count 13 of the indictment and render a judgment for the appellant as to those charges. We also reverse the appellant's first-degree theft of property conviction based on Count 9 of the indictment and remand this case to the trial court for proceedings that are consistent with this opinion with regard to Count 9 of the indictment.[5]
REVERSED IN PART; JUDGMENT RENDERED IN PART; AND REMANDED.
McMILLAN, P.J., and SHAW, J., concur; COBB, J., concurs specially, with opinion, which WISE, J., joins.
COBB, Judge, concurring specially.
I agree with the majority's analysis and its conclusions in this case. I am writing specially only to show my strong support for the recommendation in footnote 2 of the opinion urging the Alabama Supreme Court to revisit its decision in Ex parte Rosborough, 909 So.2d 772 (Ala. 2004). In Ex parte Rosborough, the Supreme Court reversed a unanimous decision of this Court affirming the conviction. The Supreme Court held that the statute of limitations in that theft-by-deception *401 case began to run as soon as the defendant obtained the money the victim had loaned him, not when the defendant stopped repaying the loan, and further held that the prosecution took place long after the limitations period had run. The facts of Ex parte Rosborough were set forth in the opinion, as follows:
"`Rosborough is an accountant by trade. . . . For many years, Rosborough prepared yearly income tax returns for his aunt, Ms. Sarah Nixon. In 1995, Rosborough approached Ms. Nixon with an investment offer, promising her a tax-free rate of return of six and one half percent, payments of $218.00 per month, and the full return of her principal amount of $40,226.36. The agreement was to terminate on December 31, 2000. Ms. Nixon signed an Agreement of Guarantee on April 18, 1995 and turned the principal amount of $40,226.36 over to Rosborough.
"`On April 19, 1995, one day after taking possession of Ms. Nixon's $40,226.36, Rosborough made a payment of $40,414.00 to the Choctaw County Clerk of Court for restitution in a prior criminal case.
"`Rosborough began making monthly "interest" payments to Ms. Nixon on May 15, 1995, as scheduled. Sometimes Rosborough's payments were late but, generally, during the first three years of the agreement, Rosborough made the monthly payments as promised. Beginning in August, 1998, however, Rosborough became [more] erratic in making the payments, sometimes skipping a month and making double payments the following month. Additionally, some monthly payments were missed altogether. The record reflects that June 28, 2000 was the last date Rosborough made a payment to Ms. Nixon.
"`After Rosborough quit making payments, Ms. Nixon testified that she tried to contact Rosborough on numerous occasions. She was unsuccessful, however, and Rosborough never returned her principal amount of $40,226.36.'
"State's brief, at 2-3 (citations to the record omitted)."
909 So.2d at 773.
Although this Court held that Rosborough's actions constituted a continuing offense and that the statute of limitations did not begin to run until he stopped making the required payments, the Alabama Supreme Court held that the limitations period began to run on April 18, 1995, when Rosborough initially obtained Nixon's money. The victim in Ex parte Rosborough did not seek to prosecute Rosborough until she learned of the deception, which occurred after Rosborough stopped making payments, and the Supreme Court held that the prosecution was barred by the statute of limitations.
I continue to have grave concerns that, under Ex parte Rosborough, victims will be barred from seeking relief because they will not discover that a crime had been committed until after the statute of limitations, as determined in Ex parte Rosborough, has run. As the majority points out in footnote 2, the victim named in Count 14 of the indictment did not learn of the theft until her husband died in 2003 and she attempted to have him buried in the plot she believed they had paid for in 1997 and 1998. The statute of limitations should have begun to run as to that count, in my opinion, when the victim would have reasonably learned of the theft of her money; that date would have been when the victim contacted an employee at the cemetery and attempted to have her husband buried *402 in the plot they believe they had purchased. Instead, under Ex parte Rosborough, the conviction obtained pursuant to that count of the indictment has been set aside because the indictment was filed after the statute of limitations had run. This is not justice.
Along with the majority, I urge the Alabama Supreme Court to correct this obvious error; Ex parte Rosborough fails to protect innocent victims and provides a legal loophole for unscrupulous offenders to slip through. The principles of equity and justice under the law demand a different result.
WISE, J., concurs.
NOTES
[1] After the State rested its case, the trial court granted the appellant's motion for a judgment of acquittal with regard to Count 11 of the indictment. Further, the jury acquitted the appellant of Count 10 of the indictment.
[2] We note that the State presented evidence that Sarah Harbin did not learn about the deception until after her husband's death on September 18, 2003. However, based on the supreme court's holding in Rosborough, the date that she learned about the deception was irrelevant. This type of factual situation highlights the problems caused by the supreme court's holding in Rosborough. In this type of case, the theft would not reasonably be discovered until after the person for whom the grave site was purchased has died. Therefore, many years may pass before the theft and the deception will be discovered. In such a situation, under the law that is now in effect, a perpetrator could evade punishment by simply covering up his actions until after the statute of limitations has expired. Accordingly, we urge the Alabama Supreme Court to revisit its decisions in Rosborough and Griffin. In the alternative, we urge the Legislature to enact an exception to § 15-3-1, Ala.Code 1975, that would provide that the three-year statute of limitations in theft by deception cases would be tolled until the theft could reasonably be discovered.
[3] The appellant also argues that the trial court erroneously admitted into evidence all of the contracts involved in this case because the State did not prove a proper chain of custody for each of the contracts. However, he did not raise this specific claim in the trial court. Therefore, it is not properly before this court. See Miller v. State, 602 So.2d 488, 496 (Ala.Crim.App.1992) (holding that "`[t]he statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.' Ex parte Frith, 526 So.2d 880, 882 (Ala.1987)").
[4] Based on our disposition of Counts 9 and 14 of the indictment, we need not determine whether the State properly proved venue with respect to those counts.
[5] Because of our disposition on each of these convictions, we pretermit discussion of the remaining issues the appellant raises in his brief to this court.